A. Clifford Edwards
Edwards, Frickle, Anner-Hughes, Cook & Culver
1601 Lewis Avenue, Suite 206, P.O. Box 20039
Billings, MT 59104
(406) 256-8155
Fax: (406) 256-8159
Email: edwardslaw@edwardslawfirm.org

Russell S. Frye*
FryeLaw PLLC
P.O. Box 33195
Washington, DC 20033
(202) 572-8267
Fax: (866) 850-5198
Email: rfrye@fryelaw.com

William L. Miller*
The William Miller Group, PLLC
3050 K Street, NW
Fourth Floor
Washington, DC 20007
(202) 342-8416
Email: wmiller@radix.net
Attorneys for Plaintiff

FILED
BILLINGS, MT

2006 FEB 7 PM 4 22

PATRICK E. DUFFY, CLERK
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RANCHERS CATTLEMEN ACTION LEGAL FUND UNITED STOCKGROWERS OF AMERICA, ) ) ) ) Plaintiff, ) ) vs. ) ) ) ) UNITED STATES DEPARTMENT OF AGRICULTURE, ) ANIMAL AND PLANT HEALTH INSPECTION ) SERVICE, et al., ) ) Defendants. ) ) | Cause No. CV-05-06-BLG-RFC<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SET MOTIONS FOR SUMMARY JUDGMENT FOR ARGUMENT** |

Continuing its desperate and transparent effort to avoid at all costs having this Court make the requisite "thorough, probing, in-depth review" of the basis for the regulation in question in this case, *R-CALF v. USDA*, 415 F.3d 1078, 1093; (9th Cir. 2005) (citations omitted), defendants the U. S. Department of Agriculture, et al.'s ("USDA's") opposition to plaintiff Ranchers Cattlemen Action Legal Fund United Stockgrowers of America's ("R-CALF USA's") motion to have this case set for argument on the pending cross-motions for summary judgment takes issue with practically everything R-CALF USA has said in support of that motion. Nevertheless, USDA fails utterly to show why a hearing should not be held.[1]

USDA's Opposition contains numerous statements that even on their face contradict the facts that have been presented.[2] Other USDA statements are highly misleading or semantical. For example, USDA intones that "Fed. R. Civ. P. 56 does not require oral argument -- or even mention it." Opp. at 3. But Rule 56(c) clearly contemplates that a "hearing" will be held, and both USDA and R-CALF USA have agreed that in this action for judicial review under the Administrative Procedure Act (APA) such hearing should consist of oral argument rather than witness testimony.

---

[1] USDA does not object to argument on the cross-motions for summary judgment, Opp. at 17, but says argument "for the reasons advanced by plaintiff" should be denied. *Id*. This seems to imply, falsely, that the arguments at pp. 9-20 of R-CALF USA's Memorandum in Support of its motion to set the motions for summary judgment, discussing why recent events support R-CALF USA's claims and make this case even more important, were advanced as reasons why the case needed to be set for argument. In fact, the legal grounds why argument is still appropriate, at pp. 2-9 of R-CALF USA's Memorandum in Support, were hardly addressed by USDA.

[2] *E.g.*, claiming that its refusal to quantitatively assess the risk of BSE from imports of cattle and meat from Canada, a country known to have BSE, is somehow consistent with USDA guidance that advocates quantitative risk assessment when assessing whether to allow imports from a country known to have the disease, *cf.* Opp. at 6 *with* R-CALF USA Memorandum in Support of Motion to Set Motions for Summary Judgment for Argument ("R-CALF Memo") at 4-5 n. 2 and AR009525, or asserting that R-CALF USA "virtually fabricated," Opp. at 8, a conflict between the Ninth Circuit panel's statement that "the vast majority of" vCJD cases "occurred in England during the height of its BSE epidemic," 415 F.3d at 1086, and the true facts of vCJD experience in the UK (*see* 70 Fed. Reg. at 462 (AR008046) and Hueston et al. Declaration I at 20 Fig. 2.

As in previous filings in this case, as well as in the Federal Register preamble supporting the Final Rule, USDA relies extensively on *ipse dixit*, even for key propositions. For example, USDA baldly asserts that the over-age cow imported from Canada did not "involve[] infected cattle," Opp. at 15 n. 9, despite the fact that there is no way to know this, because the cow was slaughtered and the beef distributed almost two weeks *before* Canada determined that the cow had been over-age. *See* R-CALF Memo at 15-16. USDA tells us that "FDA reviewed and approved the minimal risk region rule," Opp. at 14, yet there appears to be no evidence of that approval in the Administrative Record. And USDA repeats approvingly the Ninth Circuit opinion's statement that "Canada's already low rate of BSE is decreasing," Opp. at 9, knowing full well that the BSE surveillance data from Canada certainly do not support that assertion, but rather suggest a higher BSE prevalence, exposure to contaminated animal feed more recently, and a shorter incubation period, than USDA had previously assumed. *See* pp. 7-9, *infra*.

Some of the statements in USDA's Opposition are just inexplicable, like its assertion that FDA is proposing to plug some of the loopholes in the U.S. feed ban "due to a finding of BSE in a Texas Cow" last summer, Opp. at 2 and 13, when in fact FDA had announced a year and a half earlier that improvements were needed to the feed ban (AR009451-53) and FDA initiated the instant rulemaking process with an Advanced Notice of Proposed Rulemaking published in the Federal Register on July 14, 2004 (AR009931-43), or its claim that the Ninth Circuit reviewed "a complete record," Opp. at 5, when USDA did not even file its supplement to the Administrative Record with this Court until a week after briefing in the Ninth Circuit was completed.

In short, USDA's opposition continues the surreal nature of USDA's management of the BSE issue since Canada discovered its first case of BSE: first assert--without evidence and based, at best, on theories--that the incidence of BSE in Canada is very low and decreasing, that

- 3 -

the effectiveness of Canada's feed ban has been demonstrated, that the effectiveness of SRM removal policies in reducing the risk of vCJD has been demonstrated, etc., and then stick with those assertions even in the face of empirical evidence to the contrary, all the while assuring the public and this Court that the risk is minimal, without being able to tell any of us how much that risk really is.

What USDA has no real response to is the case law and logical arguments in the R-CALF Memo which indicate that a ruling on an appeal of a preliminary injunction does not and cannot resolve the case on the merits. See R-CALF Memo at 2-9; see also *Golden State Transit Corp. v. City of Los Angeles*, 754 F.2d 830, 832 n. 3 (9th Cir. 1985), *rev'd on other grounds*, 475 U.S. 608 (1986); *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004). As noted above, the Supplemental Administrative Record could not even have been referenced in briefing of the preliminary injunction appeal, and considerable information is now before this Court, such as new citations to the administrative record, expert and other declarations *submitted by both sides*, subsequent Federal Register notices, and other information and arguments that were never submitted to nor even available to the Ninth Circuit, much less to the District Court at the time it issued the preliminary injunction that was the subject of the appeal.

USDA advances the novel proposition that R-CALF USA cannot even raise arguments in support of its claims on the merits that were not raised in briefing on the appeal of the preliminary injunction. Opp. at 7. USDA offers no support for this proposition, which is not surprising, given that it is entirely without even a conceptual basis.[3] The briefing of the preliminary injunction motion was, by its very nature,...preliminary. There is simply no basis for

---

[3] In any event, in some instances R-CALF USA did not make arguments in the Court of Appeals because they respond to USDA arguments, such as new statutory interpretations and reference to legislative history, that should have been raised first in the preliminary injunction proceedings, rather than only on appeal. *See, e.g., Swift v. California*, 384 F.3d 1184, 1193 (9th Cir. 2004).

asserting that R-CALF USA was obligated to raise and fully brief all issues at the preliminary injunction phase or else be barred from arguing them in the case on the merits.

USDA's arguments that, because the Ninth Circuit *could* have looked at something buried in the Administrative Record or in the Federal Register but not cited to it or provided in the Excerpts of Record by any party, the Ninth Circuit's ruling in the preliminary injunction appeal disposes of the argument and prevents R-CALF USA from making the argument in support of summary judgment in this Court, Opp. at 7 and 10 n.3, are similarly totally devoid of any logic, much less precedent.[4] It is absurd to suggest that this Court cannot consider, for example, USDA's long history of Federal Register pronouncements about the essential need for a prohibition on imports from countries with BSE, just because the Ninth Circuit could have considered those same Federal Register notices…had any party brought them to its attention.[5]

USDA asserts that the R-CALF Memo is a prohibited "supplemental brief." Opp. at 3-4. None of the cases cited by USDA are in the context presented here: a motion to resume a case that had been stayed pending an interlocutory appeal. None of the cases bears at all on the question of whether a party in R-CALF USA's position can present argument and citations demonstrating the need for a hearing on its motion for summary judgment, especially when the Court has suggested that such a hearing might not be necessary. Even if the cases cited by USDA concerning supplemental briefing had any applicability to the situation at hand, at best

---

[4] The Ninth Circuit panel apparently did not even have access to such administrative record materials. *See* Ninth Circuit Local Rule 30-1.1(a).

[5] Note that USDA also tries to dismiss its prior policy statements that conflict with the Final Rule as based on scientific knowledge from the 1980's, Opp. at 10 n.3, when in fact the latest reconfirmations of the critical role of import bans were in 1997, 2001, 2002, and 2003. See R-CALF Memo at 9; see also Memorandum in Support of Motion for Summary Judgment at 1, 6-7.

they would suggest that the Court has discretion to disregard the additional information, not that it must do so.[6]

USDA likewise protests that the R-CALF Memo impermissibly directs the Court to matters outside the administrative record. This is shamelessly hypocritical: USDA in briefing on the cross-motions for summary judgment cited extensively to material not contained in its original submission of the administrative record nor, in many instances, even in existence at the time the Final Rule was promulgated. *See, e.g.*, Index to Supplemental Administrative Record; Defendants' Reply in Support of Motion for Summary Judgment at 7-8, 11. It has relied extensively on declarations created after promulgation of the Final Rule, which in turn provide purported justifications for the Final Rule not contained in the preamble to the Final Rule or otherwise available in the record at the time the Final Rule was promulgated. *See, e.g.*, Defendants' Motion for Summary Judgment Exhibit 1 ¶¶10.4, 12.3, 13.7, Exhibit 3 ¶¶13, 14. Indeed, one of the declarants USDA relies on heavily appears not even to have dealt with BSE issues until after the Final Rule was promulgated. *See id.* Exhibit 2 and R-CALF USA Reply Memorandum in Support of Summary Judgment at 4 n.4. In fact, even the Ninth Circuit opinion in the preliminary injunction appeal saw fit to rely in part on its own analysis of Switzerland's BSE experience that does not appear to be in the Administrative Record. *See* 415 F.3d at 1097.

As R-CALF USA has demonstrated previously, this Court can take judicial notice of USDA and FDA Federal Register notices, publications, and other statements, as well as scientific journals, law reviews, and the like. This is true even where the case concerns whether an agency acted arbitrarily, capriciously, or not in accordance with law under the APA. *See, e.g., Military*

---

[6] USDA goes even further and suggests that R-CALF USA should be prohibited from filing this reply memorandum. USDA offers no support for this extreme attempt to deprive R-CALF USA of the right to file a reply to USDA's opposition to its motion, which Local Rule 7.1(f) allows.

*Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1988) (in an action for judicial review under the APA of an Environmental Protection Agency action, a "policy document from the EPA and two reports from the General Accounting Office" appended to a brief that were "not part of the administrative record" were nevertheless "judicially cognizable apart from the record"); *see also, e.g., City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 (9th Cir. 2004) (court could take judicial notice of a state agency document in an action for judicial review under the APA of a National Park Service final action); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (court could take judicial notice of and consider a policy in a Department of Labor field operations handbook).

USDA has done nothing to refute this authority. Decisions cited by USDA and proposed *amici*, refusing to allow an agency to justify its action with *post hoc* rationales or a reviewing court to uphold an agency action based on reasoning or evidence that was not part of the record before the agency, do not preclude the reviewing court from using other statements by the agency or other facts of which it can take judicial notice in order to assess the reasonableness of the conclusions on which the agency *did* base its rulemaking. *Cf. R-CALF v. USDA*, 415 F.3d at 1093; *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 50 (1983); *Az. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001).

Even since filing of the R-CALF Memo, new facts have become available that confirm arguments R-CALF USA already has made in support of its motion for summary judgment. On January 23, 2006, the Canadian Food Inspection Agency (CFIA) announced the confirmation of BSE in "an approximately six-year-old" cow from Alberta. *See* http://www.inspection.gc.ca/english/corpaffr/newcom/2006/20060123e.shtml. In its official announcement, the CFIA stated it did not know the source of infectivity but the case supported the need for Canada to move forward in enhancing its current feed ban. *Id.* Yet despite this lack

of information, and despite the fact that this additional case both confirmed the "cluster" of BSE cases in Alberta and demonstrated that BSE infectivity has been circulating there years after the Canadian feed ban that USDA claims prevented the spread of BSE in Canada, on the same day, USDA Secretary Mike Johanns stated, ". . . I anticipate no change in the status of beef or live cattle imports to the U.S. from Canada under our established agreement." *See* http://www.usda.gov/wps/portal/!ut/p/_s.7_0_A/7_0_1RD?printable=true&contentidonly=true&contentid=2006/01/0021.xml.[7] Once again, USDA management has shown a stubborn refusal to respond to facts that demonstrate the inaccuracy of its assumptions. This elevation of policy aims over hard facts undercuts any deference to USDA's pronouncements supporting the Final Rule.[8]

---

[7] APHIS Chief Veterinary Officer John Clifford also made an official announcement on January 23, 2006, indicating an investigation was ongoing.
http://www.aphis.usda.gov/newsroom/content/2006/01/bsecan_statement.shtml (attached Exhibit 1). It is telling to note that, while the Secretary had already determined that no change in USDA import restrictions was needed, Canada was intensively investigating the facts associated with this cow, born April 15, 2000, consistent with international guidelines, including tracking its offspring, one of which has not yet been located and which was eligible for importation and subsequent slaughter in the United States under the Final Rule. *See* http://www.inspection.gc.ca/english/anima/heasan/disemala/bsccsb/ab2006/queste.shtml.

[8] *See* R-CALF USA's Memorandum in Support of Summary Judgment at 8-10. The Court also should take notice of a new report from the USDA Office of the Inspector General, available at http://www.usda.gov/oig/webdocs/50601-10-KC.pdf (attached as Exhibit 2), which reveals that the failure of USDA to perform confirmatory testing on the domestic 12-year-old cow that was later retested and found to have BSE (mentioned in R-CALF USA Reply Memorandum in Support of Summary Judgment at 13) was another manifestation of the inclination of USDA management to put policy objectives ahead of sound science: USDA scientists recommended confirmatory testing at the time, because of inconsistent results from tests already performed, but those recommendations were rejected by APHIS management, in part because of a concern that "conducting additional tests would undermine confidence in USDA's established testing protocols." *Id.* at 31; *see also id.* at 31-33. The OIG report also confirms that SRM removal requirements are not being followed at numerous plants and that USDA does not have sufficient information to make the kind of conclusions about the effectiveness of SRM removal and other slaughter restrictions that it made in this case. *Cf.* Exhibit 2 at 55, 51-54, 59-62 *with* Opp. at 15-16; *see also* Exhibit 2 at 67 ("29 nonambulatory cattle were slaughtered; 20 of them were identified as downers with no documentation of any acute injury."); *id.* at 71.

This latest Canadian BSE case (the third case in a little over a year) shows that the BSE prevalence rate per million head of cattle in Canada necessarily is higher than previous testing had indicated. It shows that BSE infectivity has been circulating, apparently in the Canadian feed system, at least as late as mid-2000, long after Canada implemented the feed ban in 1997 that USDA has assumed prevents the spread of BSE in Canada. (Presumably USDA can no longer assume that the only source of BSE infectivity is feed produced before the feed ban, as it did when BSE was found a year ago in a cow born seven months after Canada's feed ban. *Cf.* Def. Reply in Support of Summary Judgment at 7 n.5.) The new discovery of an infected cow only 5 years 9 months old, especially combined with the preceding case that was only 5 years 10 months old, also shows that USDA's assumptions that the incubation period for BSE is longer, and the level of infectivity or infectious dose available is therefore lower, in Canada than in Europe are simply contrary to the facts. *Cf.* Def. Memorandum in Support of Summary Judgment at 21 and Exhibit 1 pp. 21-26; Def. Reply Memorandum at 7.

USDA tries to dismiss this serious new development by claiming that its analysis supporting the Final Rule already anticipated that there might be a few more cases of BSE in Canada. Opp. at 7 n.2. But what USDA said in the preamble to the Final Rule was that it anticipated there might be a few more cases *exposed* to BSE-contaminated feed *before the Canadian feed ban. See, e.g.*, 70 Fed. Reg. at 485 (decision to allow imports of under-thirty-month cattle based on assumption that they would not have been exposed to potentially contaminated feed), 513, 514, 516. In contrast, in its Risk Analysis supporting the Final Rule, APHIS stated: "Another indication of an effective feed ban can be derived from epidemiologic investigations of diagnosed cases. Cases of BSE found in animals born after the feed ban was implemented would suggest either that the feed ban was ineffective or that there were

noncompliance issues."[9] *See also* 70 Fed. Reg. at 515 ("because the two [at that time] BSE-infected animals were born before the feed ban, there is no evidence to suggest that the feed ban is ineffective"). We now have two confirmed BSE cases which provide that evidence.

Nothing USDA has said in its Opposition leads to the conclusion that R-CALF USA should not be provided an opportunity for argument on its motion for summary judgment. This Court can and should take judicial notice of developments since briefing on the cross-motions for summary judgment was concluded, and even since R-CALF USA's motion to have the summary judgment motions heard, which have only increased the support for R-CALF USA's positions and emphasized the importance of resolving its claims concerning the Final Rule.

Dated:  February 7, 2006

Respectfully submitted,

/s/ A. Clifford Edwards
A. Clifford Edwards
Edwards, Frickle, Anner-Hughes, Cook & Culver
1601 Lewis Avenue, Suite 206, P.O. Box 20039
Billings, Montana 59104
(406) 256-8155

/s/ Russell S. Frye (for)
Russell S. Frye*
FryeLaw PLLC
P.O. Box 33195
Washington, DC 20033
(202) 572-8267

/s/ William L. Miller (for)
William L. Miller*
The William Miller Group, PLLC
3050 K Street, NW, Fourth Floor
Washington, DC 20007
(202) 342-8416
Attorneys for Plaintiff Ranchers Cattlemen Action Legal Fund United Stockgrowers of America

*Admitted *pro hac vice*

---

[9] AR008322; *cf.* Clifford statement attached as Exhibit 1, claiming nevertheless that the latest BSE case born almost three years after the Canadian feed ban had already been anticipated in USDA's assessment of the risk of Canadian imports.

## CERTIFICATE OF SERVICE

I certify that on February 7, 2006, I served true and correct copies of the foregoing Reply Memorandum in Support of Plaintiff's Motion To Set Motions for Summary Judgment for Argument, by first-class mail, postage prepaid on the following:

Mark Steger Smith
Assistant United States Attorney
Office of the United States Attorney
PO Box 1478
2829 3rd Ave. North, Suite 400
Billings, MT 59101

Lisa A. Olson
U. S. Department of Justice
20 Massachusetts Ave., N.W., Room 6118
Washington, DC 20530

Donna Fitzgerald
Trial Attorney
General Litigation Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington D.C. 20044-0663

*Mona L. Nystrom*